# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
**50 WALNUT STREET, P.O. BOX 419**
**NEWARK, NJ  07101-0419**
**(973) 645-6340**



**WILLIAM J. MARTINI**
    **JUDGE**

## LETTER OPINION

July 26, 2011

Randi Mandelbaum
The State University of New Jersey
Rutgers School of Law - Newark
Child Advocacy Center
123 Washington Street
Newark, New Jersey 07102
    (*Attorney for Plaintiff*)

Suzanne M. Haynes
Social Security Administration
26 Federal Plaza
Room 3904
New York, New York 10278
    (*Attorney for Defendant*)

    RE:    **T.C. obo Z.C. v. Commissioner of Social Security**
             **Civ. No. 10-5229 (WJM)**

Dear Counsel:

    Plaintiff Tamiko Carswell ("Carswell") brings this action on behalf of her minor child Z.C. ("Claimant") pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI") Benefits.  For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Claimant was born on January 15, 2001 and first presented with symptoms of Attention Deficit Hyperactive Disorder ("ADHD") when he was about six years old. (Administrative Transcript, hereinafter "Tr.," 522.) At the age of three, he first exhibited signs of a learning disorder while attending programming at the Neighborhood Center Day Care Program in Montclair, New Jersey. After the Claimant completed kindergarten, Plaintiff and her family moved to North Carolina for a period of nine months. They subsequently returned to Montclair, NJ. (*Id.* at 216.) At the time of the hearing before the ALJ, claimant was eight years old and attending the third grade at the Rand Elementary School. (*Id.* at 49.)

Plaintiff filed an application for SSI Benefits on behalf of the claimant on August 16, 2007 alleging disability due to ADHD. (*Id.* at 23.) Her claim was initially denied on May 14, 2008, and after a request for reconsideration, again denied on July 8, 2008. (*Id.* at 72, 75.) A hearing was held on November 13, 2009, before ALJ Kenneth Chu. (*Id.* at 45.)

### A. Hearing Testimony

Claimant was not present at the hearing but was represented by Mr. Tim Kozicki.[1] Mr. Kozicki argued that the Claimant suffers from ADHD, combined type, a condition characterized in the *Diagnostic and Statistic Manual* by inattentive, impulsive behavior and hyperactivity. (*Id.* at 46.) Additionally, Mr. Kozicki stated that the Claimant presents with language delays, learning disabilities and behavior problems. (*Id.*)

Ms. Carswell, Claimant's mother, was also present at the hearing and offered testimony. (*Id.* at 50.) She described the persistent need to remind Z.C. to get ready for school and to perform important tasks like brushing his teeth. (*Id.*) Ms. Carswell stated that when she takes Z.C. out in public he must be kept occupied so that he does not wander off or cause a disruption. (*Id.* at 60.) Other individuals are incapable of taking Z.C. out in public because they are unable to control him. (*Id.*)

Ms. Carswell provided a synopsis of Z.C.'s academic troubles and his inability to complete his school work on his own. (*Id.* at 51.) She explained that Z.C. would be unable to complete his homework without her assistance and would quickly lose focus without her constant presence. (*Id.*) Ms. Carswell testified that Z.C. is incapable of

---

[1] Tim Kozicki was a "Student Attorney" with the Rutgers School of Law-Newark Child Advocacy Clinic.

reciting all the letters of the alphabet and does not know basic numbers. (*Id.*) She also stated that from the time Z.C. entered pre-school he has caused disruptions in class. (*Id.* at 52.) Z.C.'s academic troubles were observed by his teachers in both North Carolina and Montclair. (*Id.* at 53.) He is in special education and is classified as multiply-disabled as a result of his poor performance in various core elements of the school curriculum. (*Id.*) These difficulties required that Z.C. be placed at a grade level below other students his age. (*Id.* at 55.) He has been placed in both speech and occupational therapy. (*Id.* at 56.) Each day after school he attends the Montclair Center where he receives therapy and additional help for his hyperactivity. (*Id.* at 61.)

Mr. Kozicki also asked Ms. Carswell about any medication that has been prescribed for Z.C. (*Id.*) She explained that he was prescribed different medications, including Ritalin, to treat his hyperactivity. (*Id.*) Although the medication seems to work, Ms. Carswell described how Z.C. would complain that the medication hurt his stomach, resulting in a reduction in dosage. (*Id.* at 57.) She testified that once Z.C. discovered that the medicine was intended to control his hyperactivity he would refuse to take it. (*Id.*) Even when Z.C. does take his medication he still suffers from an inability to focus. (*Id.* at 57-58.)

Ms. Carswell testified that she first decided to apply for SSI payments on behalf of Z.C. after being told about the program by a teacher. (*Id.* at 61.) She stated that she looked into the program and found that SSI would provide assistance for hyperactive children like Z.C. (*Id.* at 61-62.) After persistent questioning, Ms. Carswell added that she knew how to go through the process of applying for SSI benefits for Z.C. because of her previous experience with her other children. (*Id.* at 63-64.)

### B. School Reports

The ALJ was provided with medical records and teacher evaluations from: (1) Green Hope Elementary School, the school attended by Z.C. while his family was living in North Carolina from January 2007 through November 2007; (2) Nishuane Elementary School in Montclair Public School District, which he attended from Fall 2007 through Summer 2009; and (3) Rand Elementary School. These included multiple reports from teachers, reporting how Z.C. enjoyed his time at school and liked to interact with other students. (*Id.* at 47.) However, the teacher reports also indicated that Z.C. was often unable to focus, was easily distracted, and was inattentive during class. (*Id.*)

The schools Z.C. attended created plans to provide support. At Green Hope Elementary School, an "Action Plan" was constructed, which identified Z.C.'s poor reading skills and noted that he was hyperactive and disruptive. (*Id.* at 157-59.) He was then referred to special education in September 2007. (*Id.* at 171.) At Nishuane

Elementary, the Child Study Team implemented an Individualized Education Program ("IEP") for Z.C. between September 22, 2008 and June 24, 2009. (*Id.* at 281-83.) The Child Study Team set goals of improving Z.C.'s abilities in the areas of communication, fine motor skills, sensory and perception, language arts, reading, and math. (*Id.* at 290-96.) A review of Z.C.'s IEP progress, conducted on May 20, 2009, showed he had made a marked improvement from his prior abilities, especially in following directions and recognizing categories of items. (*Id.* at 473.) However, Z.C. still needed help with identifying some letters and sounds, drawing inferences, reading out loud, and with math. (*Id.*)

Z.C.'s skill levels were generally described by teachers as below average. Z.C.'s first grade teacher at Nishuane Elementary School, Ms. Rourke, completed a Social Security Administration Teacher Questionnaire on May 1, 2008. (*Id.* at 194-201.) Ms. Rourke noted that Z.C. had an obvious problem understanding vocabulary, giving adequate oral descriptions, and remembering material that he had previously been taught. (*Id.* at 195.) She described his ability to understand and complete math assignments, as well as his reading and writing skills, as serious problems. (*Id.*) When assessed by a speech-language specialist on July 17 and 18, 2008, Z.C. placed below average on tests used to assess an individual's ability to identify and label pictures and in the "very low range" on a test used to measure an individual's language functioning. (*Id.* at 336-37.) The speech-language specialist concluded that Z.C. required development in the fields of receptive and expressive language. (*Id.* at 342.)

Finally, Z.C. underwent psychological evaluations as well. He was evaluated by the Nishuane School Psychologist on July 3, 2008, and by Rand Elementary School's psychologist on November 12, 2009. (*Id.* at 343-45, 541.) The Nishuane School Psychologist determined that Z.C.'s level of cognitive function was in the average range and that he demonstrated average ability in non-verbal problem solving and perceptual reasoning. (*Id.* at 345.) She also noted that Z.C. demonstrated weak verbal comprehension and reasoning, an inability to adequately express himself, and a poor ability to maintain focus and pay attention. (*Id.*) The Rand Elementary School psychologist described Z.C. as a student in a self-contained special education classroom, classified him as Multiply Disabled, and described his inability to work independently and his constant need to be reminded to stay on task. (*Id.* at 541.)

### C. Medical and Mental Health Records

The ALJ was also provided with Z.C.'s medical and mental health records. On June 8, 2007, Z.C. received a "Well Child Exam" at Triangle Family Practice, located in Durham, North Carolina. (*Id.* at 248.) The examining physician noted that Z.C. did not appear to be hyperactive while in the examination room. (*Id.*) On February 7, 2008, Z.C.

was examined by the Family Center at Montclair's Outpatient Health Services division. (*Id.* at 265-69.) The Family Center's examination yielded an initial diagnosis of ADHD and asthma, and Z.C. was given a Global Assessment of Functioning ("GAF") score of 55. (*Id.*) After this examination, the Center's clinician recommended that Z.C. be evaluated by a psychiatrist and placed into individual and family therapy. (*Id.* at 269.) On May 29, 2008, the Family Center's Dr. Yasir Ahmad issued a prescription for Wellbutrin and Concerta. (*Id.* at 270-71.)

On May 5, 2008, Z.C. was examined by Dr. Marc Friedman, a psychologist employed by the Social Security Administration. (*Id.* at 252.) Dr. Friedman noted that Z.C. was able to express himself in short sentences and speak clearly, and that his IQ test scores were indicative of a significant learning disability. (*Id.* at 252-53.) His verbal comprehension skills were below average but his processing skills were above average. Dr. Friedman recommended that Z.C.'s special education placement be continued. (*Id.*)

On May 13, 2008, Dr. Emanuel Elfenbein, employed by the Social Security Administration, completed a Social Security Administration ("SSA") Childhood Disability Evaluation Form. (*Id.* at 259-64.) Dr. Elfenbein reported that Z.C.'s impairments were severe but did not meet, medically equal, or functionally equal the SSA's listings. (*Id.* at 259.) While Z.C. did have a marked limitation acquiring and using information, he either had a less than marked limitation or no limitation in the other functional domains evaluated by the doctor. (*Id.* at 261-62.) On July 3, 2008, an additional SSA Childhood Disability Evaluation Form was completed by Dr. Samuel Kaye, a Pediatric Specialist. (*Id.* at 272-77.) Dr. Kaye similarly concluded that Z.C.'s condition resulted in no more than a minimal functional limitation. (*Id.* at 272.) This decision was subsequently affirmed on July 7, 2008 by Dr. Thomas Shubeck. (*Id.* at 278.)

On October 6, 2008, Z.C. was examined by Dr. Joseph Nazareth, a Pediatric Neurologist. (*Id.* at 358.) His clinical impression, after administering various tests, was that Z.C. had ADHD combined type, a learning disability with processing deficits, and a speech and fine motor skill deficit. (*Id.* at 361.) He recommended that Z.C. be placed in a well structured classroom environment and receive behavioral and occupational therapy. (*Id.*) The doctor noted that at a follow up visit he would consider placing Z.C. on medicine for his ADHD. (*Id.*)

Finally, the ALJ also reviewed Z.C.'s full medical records as compiled by Mountainside Family Practice between February 2, 2002 and August 20, 2009. (*Id.* at 509-36.) On August 20, 2009, a "well child check" was conducted by Dr. Anthony Macarthy. (*Id.* at 510.) Dr. Macarthy noted that Z.C. was able to "ride [a] bicycle, tie knots,…walk a straight line and be able to keep up with other children when he plays

5

with them." (*Id.*)  The doctor also recorded that Z.C. had no sign of behavior or emotional problems.  (*Id.*)  Mountainside's records consistently note Z.C.'s ADHD beginning in March 2009. (*Id.* at 510-20.)  The first mention of Z.C.'s ADHD came on August 30, 2008 when he was first evaluated for the disorder.  (*Id.* at 522.)  His medical records for that date state that Z.C.'s symptoms included fidgeting, an inability to remain seated, a tendency to be easily distracted, an inability to pay attention, and difficulty listening.  (*Id.*)  The evaluating staff member listed that these problems were first evident when Z.C. was about six years old.  (*Id.*)

### D. ALJ's Decision and Plaintiff's Appeal

After considering testimony, school records, and medical records, the ALJ issued his opinion on December 10, 2009, finding that the claimant, while impaired, does not meet the Social Security Act's disability requirements.  (*Id.* at 37.)  Specifically, the ALJ made the following determinations, among others: (1) Claimant has the following severe impairments: attention deficit hyperactivity disorder and a learning disability; (2) Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; and (3) Claimant does not have an impairment or combination of impairments that functionally equals the listings.  (*Id.* at 26-37.)

Plaintiff requested review by the Appeals Council, which was denied on August 12, 2010, and then this action followed.  (*Id.* at 1.)  Plaintiff provides the following reasons for reversing the ALJ's determination, or in the alternative remanding the matter to a different ALJ for further consideration: (1) failure by the ALJ to fully and fairly develop the record by disregarding relevant and probative evidence without providing adequate reasons, (2) failing to provide adequate explanations or analysis for his decision that claimant does not meet or functionally equal the listings; (3) the ALJ erred by neglecting to consider the effects of a structured setting on the claimant's functioning; (4) the ALJ erred by giving greater weight to one time evaluations and by failing to give appropriate weight to evidence provided by physicians and specialists who evaluated the claimant; (5) the ALJ's findings were against the substantial weight of the evidence; and (6) the ALJ's inappropriate conduct at the hearing resulted in a denial of the claimants right to a fair hearing.

## II. DISCUSSION

### A. Standard of Review

At the administrative level, a three step sequential evaluation process is used to determine whether an individual under the age of 18 is disabled and therefore entitled to

benefits. 20 C.F.R. § 416.924(a). In the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972. If the individual is engaging in substantial gainful activity, he is not disabled. 20 C.F.R. § 416.924(c). If the individual is not engaging in substantial gainful activity, the analysis proceeds to the second step.

In the second step, the ALJ must conclude whether the claimant has a medically determinable "severe" impairment or a combination of impairments that is "severe." For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. If the claimant does not have a medically determinable sever impairment, he is not disabled. 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, the analysis proceeds to the third step.

In the third step, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, or that functionally equals the listing for an individual who is under 18. In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself, and (6) health and physical well-being. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). Social security regulations describe how to determine when a child's limitation is either marked or extreme. 20 C.F.R. §§ 416.926a(e)(2)-(3).

The district court reviews the ALJ's application of the law *de novo. See Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1191 (3d Cir. 1986). On the other hand, factual findings are reviewed to determine whether they are supported by substantial evidence. *See Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999). When substantial evidence for an ALJ's factual findings exists, this Court is bound by those determinations of the ALJ. *See Id.* (citing 42 U.S. § 405(g)). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Under the substantial evidence standard, the district court is required to review the record as a whole. *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). If there is more than one

rational interpretation of the evidence in the record, this Court must accept the conclusions of the ALJ and affirm his decision. *See Izzo v. Comm'r of Soc. Sec.,* 186 Fed. Appx. 280, 284 (3d Cir. 2006). The Court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder." *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992)). Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. *Schaudeck,* 181 F.3d at 431.

Additionally, the Third Circuit requires an ALJ to "set forth the reasons for his decision," so that the district court can conduct meaningful judicial review. *See Burnett v. Comm'r,* 220 F.3d 112, 119 (3d Cir. 2000). However, the ALJ is not required to use any particular language or follow any specific formula, as long as sufficient details are provided to allow for meaningful judicial review. *Jones,* 364 F.3d at 505.

### B. ALJ's Alleged Failure to Properly Develop the Record and Evaluate the Evidence at Step Three

Plaintiff argues that the ALJ failed to perform his duty of developing a full and fair record. (Pl. Br. 8.) Plaintiff alleges this failure resulted when the ALJ disregarded relevant and probative evidence without providing a reason. (*Id*. at 9.) Plaintiff also claims that the ALJ failed to provide an adequate explanation for his decision that the claimant does not meet or equal the listings, including Listing 112.11 as contained in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*. at 11.) The Court disagrees.

The Third Circuit has held that ALJs have a duty to fully and fairly develop the administrative record in Social Security cases. *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). This duty requires that the ALJ develop the facts in an attempt to investigate arguments both for and against granting benefits to a claimant. *See Carmichael v. Barnhart*, 104 Fed. Appx. 803, 805 (3d Cir. 2004) (holding that an ALJ's request for comprehensive examinations and medical records was evidence of the ALJ's fulfillment of his duty to develop the record). Here, the ALJ ensured that the administrative record was sufficiently developed. The Claimant was represented by counsel, and said counsel submitted a brief on claimant's behalf. During the hearing, information was introduced about Z.C.'s impairments, his difficulties learning, and the different programs and medications that had been prescribed to assist Z.C. (Tr. 45-63.) The ALJ also questioned Ms. Carswell about Z.C.'s daily activities and the process of applying for SSI benefits. (*Id.* at 63-67.) The representation provided by counsel and the submission of a plethora of supporting documents had the effect of making unnecessary any further requests by the ALJ.

### C. ALJ's Alleged Failure to Provide Adequate Explanations for the Finding that Z.C. does not Meet or Functionally Equal the Listings

Plaintiff alleges that the record is incomplete because it does not provide information about how the ALJ reached his decision that claimant does not meet or equal a Listed Impairment. (Pl. Br. 11.) Plaintiff is correct that an ALJ's mere conclusory statement that a claimant does not meet or equal the listings prevents meaningful judicial review. *Burnett v. Comm'r,* 220 F.3d 112, 119 (3d Cir. 2000). An ALJ must provide some indication of what evidence was utilized to support a decision and what evidence was rejected. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In doing so, the ALJ allows a reviewing court to determine if probative evidence was properly considered. *Id.* Where an ALJ references a specific listing and discusses the evidence at length, sufficient judicial review is permitted. *Jaramillo ex. rel. Mesa v. Comm'r. of Soc. Sec.*, 140 Fed. Appx. 557, 561 (3d Cir. 2005). An ALJ is not required to provide a "comprehensive explanation" each time evidence is rejected. *Perdomo v. Comm'r of Soc. Sec.*, No. 09-2972(WJM), 2010 WL 4615111, at *8 (D.N.J. Nov. 4, 2010).

Here, Plaintiff relies in part on *Burnett* to support her contention that the ALJ's failure to cite evidence supporting his decision as to listing 112.11 requires reversal and remand. (Pl. Br. 12). However, the ALJ's decision includes a synopsis of much of the claimants academic and mental health records, providing information suitable to allow meaningful judicial review. (Tr. 26-29.) When the ALJ's decision is read as a whole, the factors used to determine that the claimant's impairment does not meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 are plainly discernable. When explaining that Z.C. does not functionally equal the listings, the ALJ reviews the six domains of functioning that he is required to consider and provides evidentiary support for his conclusion as to each domain. (*Id.* at 31-37.) The Court disagrees with Plaintiff and finds that the ALJ adequately explained his reasoning at Step Three.

### D. The ALJ's Alleged Failure to Consider the Effects of a Structured Setting on the Claimant's Functioning

Plaintiff argues that the ALJ erred by not considering the effects of a structured setting on Z.C.'s functioning, as stipulated by 20 C.F.R. § 416.924a(b)(5). (Pl. Br. 22.) Plaintiff asserts that the ALJ disregarded copious evidence pertaining to Z.C.'s need for structured settings and their effect on him, requiring at least a remand to a different ALJ. (*Id.* at 24-28.) Under the SSA's regulations, applicants for SSI benefits must be considered outside of a structured setting in which they have been placed. 20 C.F.R. § 416.924a(b)(5)(iv)(C); SSR-09-3P. However, the fact that a claimant may or may not have been placed in special education is not itself determinative of the claimant's

disability status. *Richardson v. Barnhart*, 136 Fed. Appx. 463, 466 (3d Cir. 2005) (quoting 20 C.F.R. § 416.924a(b)(7) (2005)).

Here, the ALJ adequately considered the structured settings in which Z.C. had been placed along with Z.C.'s ability to function outside of such settings. The ALJ stated in his decision that he evaluated Z.C. "as provided in 20 CFR 416.926a(b)." (Tr. 30.) This included an evaluation of how Z.C. "functions in all settings and at all times, as compared to other children the same age who do not have impairments." *Id.* Other courts in this District have used similar language when describing the appropriate level of analysis to be employed by ALJs. *Cruz v. Comm'r of Soc. Sec.*, No. 08-3721(SRC), 2009 WL 2448517 at *10 (D.N.J. Aug. 10, 2009) (noting that ALJs "should consider…generally, how the child's functioning compares to that of children the same age who do not have impairments."). The ALJ noted that: (1) Z.C. had been referred to his school's resource center for assistance, (2) "had difficulty with functioning independently," (3) had "trouble following instructions and focusing in school and at home," (4) had been given a "full time aide to assist him in school and (5) that he is attending speech and occupational therapy two times per week in a self-contained special education classroom." (Tr. 28-30.) The Court finds that the ALJ properly considered Z.C.'s functioning in all settings and noted his participation in structured programming.

### E. The ALJ's Alleged Failure to Give Proper Weight to Treating Physicians' Evaluations

Plaintiff claims that the ALJ's decision is not in keeping with 20 C.F.R. § 416.927(d)(2), which provides that more weight is to be given to a claimant's treating sources because they have a greater ability to provide a complete picture of the claimant's functionality. (Pl. Br. 28.) Specifically, Plaintiff alleges that the ALJ granted more weight to the evaluations conducted by SSA physicians while affording less weight to the claimant's own physicians. (*Id*. at 30.) Plaintiff also believes that the ALJ did not give due weight to evaluations conducted by specialists. (*Id*. at 32.)

A treating physician's opinions should be given great weight, especially when such opinions and judgments are based on treatment and observation of a patient over a prolonged period of time. *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). However, a treating physician's determination that a claimant is "'disabled'… is not dispositive of the issue." *Adorno v. Shalala*, 40 F. 3d 43 (3d Cir. 1994) (citing *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990)). Agency physicians are capable of providing expert analysis when conducting Social Security disability evaluations and their analysis is entitled to great deference. *Perdomo*, 2010 WL 4615111, at *7 (citing *Alexander v. Shalala*, 927 F.Supp. 785, 795 (D.NJ. 1995); 20 C.F.R. § 416.927(f)(2)(i)).

A review of the ALJ's decision indicates that he did indeed afford adequate weight to the opinions of the claimant's treating physicians. Plaintiff asserts that the ALJ disregarded treatment records from Mountainside Family Practice and Dr. Nazareth, but the ALJ stated that he had carefully considered Z.C.'s medical and non-medical records in their entirety and found that they were consistent with the reports issued by the SSA physicians. (Tr. 27-28.) These reports, having been written by SSA consultants, are entitled to the weight afforded to them by the ALJ. *See Perdomo*, 2010 WL 4615111, at *7. The Third Circuit has upheld ALJ decisions where the opinions of treating physicians were disregarded due to their inconsistency with substantial evidence found in other parts of a claimant's record. *See generally Drejka v. Comm'r of Soc. Sec.*, 61 Fed. Appx. 778, 782 (3d Cir. 2003). Here however, the ALJ found the decisions of all of Z.C.'s evaluators to be consistent. (Tr. 31.) Accordingly, the Court finds that the ALJ gave adequate to the findings of treating physicians.

### F. ALJ's Findings Allegedly Against the Substantial Weight of the Evidence

Plaintiff claims substantial evidence cannot exist where, as is alleged here, medical evidence has been disregarded or inadequately analyzed. (Pl. Br. 33.) According to the Plaintiff, if all of the evidence had been appropriately analyzed by the ALJ, then the substantial weight of the evidence would indicate that Z.C. functionally equals the listings for ADHD. (*Id*. at 35.) A claimant functionally equals the listings when "the claimant's impairment or combination of impairments…result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain. (*Id*. at 24 (citing 20 C.F.R. § 416.926a(d))). Specifically, Plaintiff claims that there is substantial evidence to support the assertion that Z.C. functionally equals the listings because he has at least marked limitations in three of the six functional domains which the ALJ must consider. (*Id*. at 35.)

When the findings of the ALJ are supported by substantial evidence, reviewing courts may not conduct their own interpretation of the facts and must give deference to the agency's determination. *Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190-91 (3d Cir. 1986). When evidence supports the ALJ's determination, it is irrelevant whether a different determination could have been reached. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Here, the record contains substantial evidence to support the ALJ's determination that Z.C. had a marked limitation in acquiring and using information but had less than a marked limitation or no limitation in the other domains. (Tr. 32-37.) Plaintiff contests this determination in regard to the domains of "attending and completing tasks" and "interacting with others." (Pl. Br. 35.) The ALJ's determination that Z.C. has less than a

marked limitation in attending and completing tasks is supported by indications in the record that Z.C. has an overall level of cognitive functioning in the average range. According to the record, this information indicates that Z.C. has average ability to solve problems and use reasoning skills. (Tr. 344.) Substantial evidence also supports the ALJ's determination that Z.C. has no limitation in interacting and relating with others. As the ALJ's decision indicates, the record is rife with examples of Z.C.'s ability to successfully interact with his peers and adults. (*Id*. at 35, 287, 398.) These records, as cited by the ALJ, provide substantial evidence for his determination.

### G. ALJ's Allegedly Inappropriate Conduct at the Hearing

Finally, Plaintiff alleges that the ALJ acted inappropriately at the hearing and thus this matter, if remanded, should be assigned for consideration before a different ALJ. (Pl. Br. 35.) In support of this allegation, Plaintiff claims that the hearing was conducted in an adversarial manner even though such a manner is improper for an administrative hearing. (*Id*. at 36.) Plaintiff also takes issue with several questions asked by the ALJ, stating that the ALJ's questioning reflected his partiality and resulted in unfair implications. (*Id*. at 38.) Additionally, Plaintiff believes the ALJ was hostile throughout the hearing, treating the claimant's representative unfairly and asking irrelevant questions. (*Id*. at 37, 39.)

A remand may be required where an ALJ displays individual bias while adjudicating a matter. *Ventura v. Shalala*, 55 F.3d 900, 904 (3d Cir. 1995) (citing *Hummel v. Heckler*, 736 F.2d 91 (3d Cir. 1984)). In *Ventura*, the Third Circuit found an ALJ's conduct to be inappropriate and remanded the claimant's case for consideration by a different ALJ. *Id.* at 902. There, the Court recognized instances in which the ALJ repeatedly interrupted the claimant's representative and accused the claimant of being untruthful. *Id.* at 903. The Court also pointed out several instances in which the transcript of the hearing illustrated the ALJ's blatant intimidation of the claimant's representative. *Id.*

Here, unlike *Ventura*, the ALJ conducted himself in a professional manner. The ALJ politely introduced himself to the Plaintiff at the beginning of the hearing and told her to "relax, take it easy and speak up." (Tr. 45.) He allowed Mr. Kozicki, the claimant's representative, to deliver an opening statement and then to examine Plaintiff. (*Id*. at 48-63.) Mr. Kozicki's questioning of Plaintiff comprised a large portion of the hearing and was conducted without any interruption by the ALJ. *Id.* The ALJ then proceeded to ask Plaintiff a few questions. (*Id*. at 63.) After one instance of interruption, the ALJ continued to question Plaintiff without incident. (*Id*. at 64-67.) Plaintiff advances the belief that the ALJ sought to imply that Plaintiff applied for benefits whether or not her children had an actual disability. (Pl. Br. 38.) This belief,

though, appears to be only speculation as Plaintiff offers no additional evidence to support this serious assertion. Plaintiff also claims that the ALJ's questions about her financial stability and home environment were irrelevant and indicate the ALJ's bias. (*Id*. at 38-39.) However, as *Ventura* instructs, the ALJ has a duty to fully develop the record and collect information regarding a claimant's right to benefits. *Ventura*, 55 F.2d at 902. After reviewing the hearing transcript it is evident that the ALJ's conduct was proper.

### III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**